| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Erica Loftis, Esq. (SBN 259286)<br>Merdaud Jafarnia, Esq. (SBN 217263)<br>Adam P. Thursby, Esq. (SBN 318465)<br>GHIDOTTI \| BERGER LLP<br>1920 Old Tustin Ave.<br>Santa Ana, CA 92705<br>Ph: (949) 427-2010<br>Fax: (949) 427-2732<br>bknotifications@ghidottiberger.com<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - Los Angeles Division**

| In re:<br>David Michael Salazar | CASE NO.: 2:18-bk-15393-WB |
|---|---|
| | CHAPTER: 13 |
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE: November 02, 2021 |
| | TIME: 10:00 a.m. |
| Debtor(s). | COURTROOM: 1375 |

**Movant:** U.S. Bank Trust National Association, as Trustee of the Igloo Series IV Trust, its successors and/or assignees

1. **Hearing Location:**

   ☒ 255 East Temple Street, Los Angeles, CA 90012       ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____; and, you may appear at the hearing.

    a.  ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  October 7, 2021

GHIDOTTI | BERGER LLP
_____
Printed name of law firm (if applicable)

Erica Loftis-Pacheco
_____
Printed name of individual Movant or attorney for Movant


/s/ Erica Loftis-Pacheco
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                          Page 2                          F 4001-1.RFS.RP.MOTION

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

    ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

    ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

    ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

    ☐ Other (*specify*):

2. **The Property at Issue (Property):**

    a. Address:

    *Street address*: 13727 Gaylin Street
    *Unit/suite number*:
    *City, state, zip code*: Whittier, California 90601

    b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit 1_____):

3. **Bankruptcy Case History:**

    a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13
    was filed on (*date*) 05/10/2018____.

    b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) _____.

    c. ☒ A plan, if any, was confirmed on (*date*) 11/05/2018____.

4. **Grounds for Relief from Stay:**

    a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

    (1) ☒ Movant's interest in the Property is not adequately protected.

        (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

        (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

        (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

    (2) ☐ The bankruptcy case was filed in bad faith.

        (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

        (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

        (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

        (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

        (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

        (F) ☐ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 3                            **F 4001-1.RFS.RP.MOTION**

(3) ☒ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
        ☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12
        trustee or chapter 13 trustee.

    (B) ☒ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not
        been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____,
    which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to
    § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or
    30 days after the court determined that the Property qualifies as "single asset real estate" as defined in
    11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay,
    hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or
        court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have
    been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed
    with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify)*:

6. **Evidence in Support of Motion: (D**eclaration(s) MUST be signed under penalty of perjury and attached to this
**motion)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set
    forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case
    commencement documents are attached as Exhibit _____.

d. ☒ Other:

    Deed of Trust as Exhibit "1", Note as Exhibit "2", Assignment(s) as Exhibit "3", Post-petition Payment History
    as Exhibit "4"

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Movant requests the following relief:**

1.  Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2.  ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3.  ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4.  ☐ Confirmation that there is no stay in effect.

5.  ☐ The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6.  ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7.  ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8.  ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9.  ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☒ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:  October 7, 2021

GHIDOTTI | BERGER LLP
_____
Printed name of law firm (*if applicable*)
Erica Loftis-Pacheco
_____
Printed name of individual Movant or attorney for Movant

/s/ Erica Loftis-Pacheco
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                  Page 5                                  **F 4001-1.RFS.RP.MOTION**

# REAL PROPERTY DECLARATION

I, (print name of Declarant) _____Kathy Watson_____, declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (specify):

    a.  ☐  I am the Movant.

    b.  ☐  I am employed by Movant as (state title and capacity):

    c.  ☒  Other (specify):   I am employed by SN Servicing Corporation which services the loan on the movant's behalf.

2.  a.  ☒  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐  Other (see attached):

3.  The Movant is:

    a.  ☒  Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _2___ .

    b.  ☒  Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _1/3___ .

    c.  ☐  Servicing agent authorized to act on behalf of the:
        ☐  Holder.
        ☐  Beneficiary.

    d.  ☐  Other (specify):

4.  a.  The address of the Property is:

        Street address: 13727 Gaylin Street
        Unit/suite no.:
        City, state, zip code: Whittier, California 90601

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

        20071869079 recorded on 08/09/2007 in the Los Angeles County Recorder's Office.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                         Page 6                                    F 4001-1.RFS.RP.MOTION

5. Type of property (*check all applicable boxes*):

    a. ☒ Debtor's principal residence    b. ☐ Other residence
    c. ☐ Multi-unit residential    d. ☐ Commercial
    e. ☐ Industrial    f. ☐ Vacant land
    g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

    a. ☒ Sole owner

    b. ☐ Co-owner(s) (*specify*):

    c. ☐ Lienholder (*specify*):

    d. ☐ Other (*specify*):

    e. ☒ The Debtor ☒ did ☐ did not  list the Property in the Debtor's schedules.

    f. ☒ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☒ trust deed.
        The deed was recorded on (*date*) 08/09/2007____.

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
    that encumbers the Property.

    a. ☒ A true and correct copy of the document as recorded is attached as Exhibit 1____.

    b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
        attached as Exhibit 2____.

    c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
        trust to Movant is attached as Exhibit 3____.

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 640.625.00 |
| b. | Accrued interest: | $ | $ | $ 12,737.89 |
| c. | Late charges | $ | $ | $ |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 26,911.63 |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[      ] | $[      ] | $[ 2,600.60    ] |
| g. | TOTAL CLAIM as of (*date*): 09/15/2021 | $ | $ | $ 677,673.92 |

    h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

    a. Notice of default recorded on (*date*) _____ or ☒ none recorded.

    b. Notice of sale recorded on (*date*) _____ or ☒ none recorded.

    c. Foreclosure sale originally scheduled for (*date*) _____ or ☒ none scheduled.

    d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

    e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

    f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*        Page 7        **F 4001-1.RFS.RP.MOTION**

10. Attached (*optional*) as Exhibit 4____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a.  Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___.

    b.  Number of payments that have come due and were not made: _____. Total amount: $_____

    c.  Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

    d.  The fair market value of the Property is $_____, established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) ☐ Other (*specify*):

    e.  **Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** | | | |

    f.  Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

        (1) ☐ Preliminary title report.

        (2) ☐ Relevant portions of the Debtor's schedules.

        (3) ☐ Other (*specify*):

    g.  ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

    h.  ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

i. ☐ Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☒ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: 06/14/2018 .
A plan confirmation hearing currently scheduled for (or concluded on) the following date: 07/11/2018 .
A plan was confirmed on the following date (*if applicable*): 11/05/2018 .

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| 7 | | $ $3,239.89 | $ 22,679.23 |
| | | $ 146.03 | $ 146.03 |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                    $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                      $ 1,238.00
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:              $[ 2,600.60          ]

TOTAL POSTPETITION DELINQUENCY:          $ 21,462.66

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $ 3,239.89 will come due on 10/1/2021 , and on
the 15 th day of each month thereafter. If the payment is not received by the _____ day of the month, a late
charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):

$3,240.00 received on (*date*) 9/08/2021
$3,240.00 received on (*date*) 08/03/2021
$3,240.00 received on (*date*) 07/08/2021

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                              Page 9                         **F 4001-1.RFS.RP.MOTION**

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

    a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

    b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

    c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

    d. ☐ Other (*specify*):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

    b. ☐ Multiple bankruptcy cases affecting the Property include:

        1. Case name: _____
           Chapter: _____    Case number: _____
           Date dismissed: _____    Date discharged: _____    Date filed: _____
           Relief from stay regarding the Property ☐ was ☐ was not granted.

        2. Case name: _____
           Chapter: _____    Case number: _____
           Date dismissed: _____    Date discharged: _____    Date filed: _____
           Relief from stay regarding the Property ☐ was ☐ was not granted.

        3. Case name: _____
           Chapter: _____    Case number: _____
           Date dismissed: _____    Date discharged: _____    Date filed: _____
           Relief from stay regarding the Property ☐ was ☐ was not granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

    a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

    b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

    c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

10-7-2021          Kathy Watson                    Kathy Watson
Date                  Printed name                        Signature

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

> 1920 Old Tustin Avenue,
> Santa Ana, CA 92705

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/7/2021  , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

> Debtors Counsel: Steven Ibarra, sibarra@ibarralaw.com
>
> Trustee:Nancy K Curry, trustee13la@aol.com
>
> United States Trustee: ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 10/7/2021  , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

> Debtor: David Michael Salazar, 13727 Gaylin Street, Whittier, California 90601
>
> Juniorlien Holder: Chevy Chase Fed Sav Bank, Attn: Bankruptcy, PO Box 30285, Salt Lake City, UT 84130
>
> Hon. Julia W. Brand, 255 E. Temple Street, Suite 1382/Courtroom 1375, Los Angeles, CA 90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/07/2021 | Ana Palacios | /s/ Ana Palacios |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                              Page 12                          **F 4001-1.RFS.RP.MOTION**

# EXHIBIT "1"



**This page is part of your document - DO NOT DISCARD**



## 20071869079

**Pages: 024**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/09/07 AT 08:00AM**

Fee: 79.00
Tax: 0.00
Other: 0.00
Total: 79.00

**Title Company**

**TITLE(S) :**



L E A D    S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**



E447851    **THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY
'OLD' REPLIC TITLE CO. - O.C.

Recording Requested By
**GreenPoint Mortgage Funding, Inc.**
Return To
**GreenPoint Mortgage Funding, Inc.**
**981 Airway Court, Suite E**
**Santa Rosa, CA 95403-2049**

8/09/07

**20071869079**

Prepared By
**GreenPoint Mortgage Funding, Inc.**
**100 Wood Hollow Drive,**
**Novato, CA 94945**

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **July 24, 2007**
together with all Riders to this document.
**(B) "Borrower"** is **David M. Salazar, A Single Man**

Borrower's address is **13727 Gaylin Street, Whittier, CA 90601**
Borrower is the trustor under this Security Instrument
**(C) "Lender"** is **GreenPoint Mortgage Funding, Inc.**

Lender is a **Corporation**
organized and existing under the laws of **the State of New York**

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT WITH MERS    Form 3005 1/01

VMP -6A(CA) (0207) 01
Page 1 of 15
VMP Mortgage Forms, Inc
**Customized by GreenPoint Mortgage Funding, Inc.**



*3*

Lender's address is **100 Wood Hollow Drive, Novato, CA 94945**

**(D) "Trustee"** is **Marin Conveyancing Corp.**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O  Box 2026, Flint, MI 48501-2026, tel  (888) 679-MERS

**(F) "Note"** means the promissory note signed by Borrower and dated **July 24, 2007**
The Note states that Borrower owes Lender **six hundred eighty thousand and 00/100**
Dollars
(U S. **$680,000.00**          ) plus interest  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **August 1, 2037**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property "

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower [check box as applicable]

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |
| [x] Occupancy Rider | [ ] Interim Interest Rider | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for, (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument



-6A(CA) (0207) 01                     Page 2 of 15                          **Form 3005  1/01**

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U S.C. Section 2601 et seq ) and its implementing regulation, Regulation X (24 C F R Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County                          of                    Los Angeles
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

**As more particularly described in exhibit "A" attached hereto and made a part hereof.**

Parcel ID Number  ███████████                   which currently has the address of
**13727 Gaylin Street**                                                    [Street]
**Whittier**                          [City], California **90601**      [Zip Code]
("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances ████

  -6A(CA) (0207) 01           Page 3 of 15                      Form 3005  1/01

*5*

of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note  Borrower shall also pay funds for Escrow Items pursuant to Section 3  Payments due under the Note and this Security Instrument shall be made in U S currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender. (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3  Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for. (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items " At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be



in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably  Lender may require Borrower to pay, in connection with this Loan, either, (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance  Lender shall have the right to hold the policies and renewal certificates  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender  Lender may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



the excess, if any, paid to Borrower  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to  (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**



**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender



to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument



**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender (a) cash; (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA




*13*

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21. (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



(VMP) -6A(CA) (0207) 01                    Page 12 of 15                    Form 3005  1/01

14

**NON-UNIFORM COVENANTS** Borrower and Lender further covenant and agree as follows.

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



*15*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses

_____ (Seal)
David M. Salazar          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                            -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                            -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                            -Borrower

07 18690 79



VMP® -6A(CA) (0207) 01          Page 14 of 15          Form 3006   1/01



State of California
County of Los Angeles

On  8·2-07                    before me, Edward Madrid III, A Notary Public
                                                    personally appeared
David M. Salazar

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal



EDWARD MADRID III
COMM #1574179
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm Exp April 29 2009

(Seal)

# EXHIBIT "2"

# ADJUSTABLE RATE NOTE

**(LIBOR Six-Month (As Published In The Wall Street Journal) - Rate Caps)**

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN $782,000.00. THE INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND RIDER. A BALLOON PAYMENT MAY BE DUE AT MATURITY.**

| July 24, 2007 | Buena Park | California |
|---|---|---|
| (Date) | (City) | (State) |

**13727 Gaylin Street, Whittier, CA 90601**
(Property Address)

## 1.     BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay **U.S. $680,000.00** (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **GreenPoint Mortgage Funding, Inc.** I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.     INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.875%**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.     PAYMENTS

### (A)     Time and Place of Payments

I will make my monthly payments on the first day of each month beginning on **September 1, 2007**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before **Principal**, if any. If, on **August 1, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 79363, City of Industry, CA 91716-9363**, or at a different place if required by the Note holder.

**(B)    Amount of My Monthly Payments**

Each of my monthly payments will be in the amount of U.S. **$2,195.83** (the "Minimum Payment") every month (i) for the first **60** month(s), or (ii) until payment of the Minimum Payment on my next scheduled payment date would cause my principal balance to exceed the Maximum Limit set forth in section 3(D), whichever event occurs first (the "Option Period"). The Minimum Payment is calculated based upon the amount of interest that will accrue each month at a rate equal to **3.875%**. Payment of the Minimum Payment amount will result in accrued but unpaid interest being added to Principal. The unpaid Principal and any accrued but unpaid interest will then accrue additional interest at the rate then in effect. This practice is known as negative amortization.

After the expiration of the Option Period and through the first 120 scheduled payments, my monthly payments will be in an amount sufficient to pay accrued interest at the rate determined as described in Section 4 of this Note (the "Interest Only Period"). In addition, if I make payments of principal and/or accrued unpaid interest during the Interest Only Period, my monthly interest-only payment amount will change and will be based on the remaining Principal and my then current interest rate.

After the expiration of the Interest Only Period, I will pay principal and interest by making payments every month for the remaining term (the "Full Amortization Period"). The amount of payments during the Full Amortization Period will be determined by the Note Holder as set forth in Section 4.

**(C)    Additions to My Unpaid Principal**

During the Option Period, my Minimum Payment could be less than or greater than the amount of interest owed each month. For each month that my Minimum Payment is less than the interest owed, the Note Holder will subtract the amount of my Minimum Payment from the amount of the interest portion and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2 or Section 4. For each month that the Minimum Payment is greater than the interest portion, the Note Holder will apply the payment to interest before Principal.

**(D)    Limit on My Unpaid Principal; Increased Minimum Payment**

My unpaid Principal can never exceed the Maximum Limit equal to **115%** of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to additions to my unpaid Principal described in Section 3(C). If on any payment due date I would exceed the Maximum Limit by paying my Minimum Payment, then my monthly payment will be adjusted to an amount equal to the Interest Only Payment described in Section 3(E)(i). I will continue to pay that amount until the Interest Only Period expires.

**(E)    Additional Payment Options**

During the Option Period, the Note Holder may provide me with up to two (2) additional payment options (the "Payment Options"). I will be eligible to select one of the Payment Options if it results in a larger monthly payment than my regular Minimum Payment. I may be given the following Payment Options:

(i) Interest Only Payment: Pay only the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) Fully Amortized Payment: Pay the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments, at the then current interest rate.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**(F)    Notice of Changes**

The Note Holder will deliver or mail to me notice of any changes in my Minimum Payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G)    Date of First Payment and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Due Date") shall be that date which is ten year(s) from the first payment due date, as reflected in Section 3(A) of the Note.

**4.    ADJUSTABLE INTEREST RATE**

**(A) Interest Rate Change Dates**

The initial interest rate I will pay may change on the first day of **August, 2012,** and the adjustable interest rate I will pay may change on that day every 6th month thereafter. The date on which my interest rate may change is called an "Interest Rate Change Date."

**(B) The Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent index figure available as of the date 45 days before each Interest Rate Change Date is called the "Current Index"

If the index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **two and three-quarters** percentage points (**2.750%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below this rounded amount will be my new interest rate until the next Interest Rate Change Date.

The Note Holder will then determine the amount of the monthly payment. When the Interest Rate Change Date occurs during the Interest Only Period, the new monthly interest-only payment will be based on the unpaid Principal that I am expected to owe at the Interest Rate Change Date and my new interest rate. If the Interest Rate Change Date occurs during the Full Amortization Period, my new monthly payment will be in an amount sufficient to repay the unpaid Principal that I am expected to owe at the Interest Rate Change Date at my new interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Rate Change Date will not be greater than **11.875%** or less than **2.750%**. Thereafter, my interest rate will never be increased or decreased on any single Interest Rate Change Date by more than **1.000%** from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than **11.875%**.

**(E) Effective Date of Changes .**

My new interest rate will become effective on each Interest Rate Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Rate Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will also include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

**5.      BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayment without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the Interest Only Period, my monthly interest-only payment amount will change and will be based on the remaining Principal and my then current interest rate. If the partial Prepayment is made during the Option Period or the Full Amortization Period, my partial Prepayment may reduce the amount of my monthly payments after the first Interest Rate Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.      LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.      BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **6.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.     GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.     OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, it also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.     WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)     Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)     When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____          _____
                              (Borrower)                                          (Borrower)
David M. Salazar

_____          _____
                              (Borrower)                                          (Borrower)

_____          _____
                              (Borrower)                                          (Borrower)

_____          _____
                              (Borrower)                                          (Borrower)

WITHOUT RECOURSE
PAY TO THE ORDER OF:
Bayview Loan Servicing, LLC

GreenPoint Mortgage Funding, Inc.

Larry R. Kern
Assistant Vice President

**ALLONGE TO NOTE**

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW:

BORROWER:  DAVID M SALAZAR

NOTE DATE:  7/24/2007

ORIGINAL PRINCIPAL BALANCE:  $680,000.00

PAY TO THE ORDER OF:  Bayview Dispositions IIIa, LLC

WITHOUT RECOURSE

Bayview Loan Servicing, LLC

BY:_____

NAME: Jeromy Brantner
TITLE: Vice President

SALAZAR, DAVID          KASOTA
MLIC                    WAREHOUSE-WARE

## ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW:

BORROWER:  DAVID M SALAZAR

NOTE DATE:  7/24/2007

ORIGINAL PRINCIPAL BALANCE:  $680,000.00

PAY TO THE ORDER OF:  Metropolitan Life Insurance Company

WITHOUT RECOURSE

Bayview Dispositions IIIa, LLC

BY:

NAME: Robert Hall
TITLE: Vice President

ALLONGE TO NOTE

Original Loan Amount:   $680,000.00

Note Date:              7/24/2007

Borrower(s):            DAVID M SALAZAR

Address:                13727 GAYLIN ST

                        WHITTIER, CA  90601

PAY TO THE ORDER OF:

WITHOUT RECOURSE

Metropolitan Life Insurance Company by Bayview Loan Servicing, LLC, its Attorney-in-Fact

BY: _____
    NAME: Robert Hall
    TITLE: Vice President

# EXHIBIT "3"



▲                **This page is part of your document - DO NOT DISCARD**                ▲

# 20120924802



**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/21/12 AT 12:38PM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |

▲ ▲

**L E A D S H E E T**

**SEQ:**
**01**

**DAR - Mail (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

▲ ▲

E311061

Recording Requested by: M. E. Wileman

PLEASE FORWARD RECORDED DOCUMENT TO:
BAYVIEW LOAN SERVICING, LLC
c/o M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092



06/21/2012

*20120924802*

## Assignment of Deed of Trust

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC. ITS SUCCESSORS AND ASSIGNS P.O. Box 2026, Flint, MI 48501-2026 (Assignor)** by these presents does assign and set over, without recourse, to **BAYVIEW LOAN SERVICING, LLC  4425 Ponce De Leon Blvd., Coral Gables, FL 33146 (Assignee)** the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by **DAVID M SALAZAR, A SINGLE MAN** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC. ITS SUCCESSORS AND ASSIGNS.    Said deed of trust **Dated: 7/24/2007** is recorded in the **State of CA, County of Los Angeles on 8/9/2007, Document 20071869079 AMOUNT: $ 680,000.00**    Property Address: 13727 GAYLIN STREET, WHITTIER, CA 90601

IN WITNESS WHEREOF, the undersigned corporation/trust has caused this instrument to be executed as a sealed instrument by its proper officer. Executed on: 6/4/12
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC. ITS SUCCESSORS AND ASSIGNS

By:  _____

Robert G. Hall, Vice President



State of Florida, County of Miami-Dade
        Before me, Rogelio A. Portal, Notary Public, personally appeared, Robert G. Hall, Vice President known to me to be the person(s) whose name(s) is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Given under my hand and seal of office on 6/4/12.

_____

Notary public, Rogelio A. Portal
My commission expires: August 25, 2012

ROGELIO A. PORTAL
Notary Public - State of Florida
Commission #DD784210
My Commission Expires
August 25, 2012
Bonded Through National Notary Association

CA   Los Angeles                                                    BAYVIEW/MERS/ASMT



**This page is part of your document - DO NOT DISCARD**



# 20160261211

**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/10/16 AT 08:22AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



**SEQ:**
**01**

DAR - Mail (Intake)



**THIS FORM IS NOT TO BE DUPLICATED**



E244265

PREPARED BY AND RECORDING REQUESTED BY:
SECURITY CONNECTIONS, INC.
WHEN RECORDED MAIL TO:
SECURITY CONNECTIONS, INC.
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID 83401
PH. (208)528-9895



Document Number:11777872

Batch Number:7410739

**CALIFORNIA**
COUNTY OF **LOS ANGELES**
LOAN NO.: ███████████

# CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, **BAYVIEW LOAN SERVICING, LLC**, located at **4425 PONCE DE LEON BLVD, SUITE #500, CORAL GABLES, FL 33146**, Assignor, does hereby assign to **BAYVIEW DISPOSITIONS IIIA, LLC**, located at **4425 PONCE DE LEON BLVD, SUITE #500, CORAL GABLES, FL 33146**, Assignee, its successors and assigns, all its rights, title and interest in and to that certain Deed of Trust dated **JULY 24, 2007**, executed by **DAVID M. SALAZAR, A SINGLE MAN**, Trustor, to **MARIN CONVEYANCING CORPORATION**, Trustee, for the benefit of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS**, Original Beneficiary, and recorded on **AUGUST 09, 2007** as Instrument No. 20071869079 in the official records of the County Recorder's Office in and for the County of **LOS ANGELES**, State of **CALIFORNIA**.

**AS DESCRIBED IN SAID DEED OF TRUST REFERRED TO HEREIN**

Commonly known as: 13727 GAYLIN STREET WHITTIER, CA 90601

TOGETHER WITH all rights accrued or to accrue under said Deed of Trust.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this _____ **JAN 1 4 2016**

**BAYVIEW LOAN SERVICING, LLC**

Name: ~~Robert G. Hall~~
Title: ~~Vice President~~

STATE OF FLORIDA          COUNTY OF MIAMI-DADE          ) ss.

On **JAN 1 4 2016**, before me, **Maria Isabel Puerto**, personally appeared          **Robert G. Hall** known to me to be the _____**Vice President**_____ of **BAYVIEW LOAN SERVICING, LLC** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

Maria Isabel Puerto          (COMMISSION EXP. _____)
NOTARY PUBLIC

MARIA ISABEL PUERTO
MY COMMISSION # FF219504
EXPIRES: July 30, 2019

Page 1 of 1



**This page is part of your document - DO NOT DISCARD**



# 20160261216

**Pages:
0002**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**03/10/16 AT 08:23AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**

**SEQ:
01**

DAR - Mail (Intake)



**THIS FORM IS NOT TO BE DUPLICATED**



E244265

PREPARED BY AND RECORDING REQUESTED BY:
SECURITY CONNECTIONS, INC.
WHEN RECORDED MAIL TO:
SECURITY CONNECTIONS, INC.
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID 83401
PH. (208)528-9895



Document Number: 11777882

Batch Number: 7410750

**CALIFORNIA**
COUNTY OF **LOS ANGELES**
LOAN NO.:

# CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, **BAYVIEW DISPOSITIONS IIIA, LLC**, located at **4425 PONCE DE LEON BLVD, SUITE #500, CORAL GABLES, FL 33146**, Assignor, does hereby assign to **METROPOLITAN LIFE INSURANCE COMPANY**, located at **C/O BAYVIEW LOAN SERVICING 4425 PONCE DE LEON BLVD, SUITE #500, CORAL GABLES, FL 33146**, Assignee, its successors and assigns, all its rights, title and interest in and to that certain Deed of Trust dated **JULY 24, 2007**, executed by **DAVID M. SALAZAR, A SINGLE MAN**, Trustor, to **MARIN CONVEYANCING CORPORATION**, Trustee, for the benefit of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS**, Original Beneficiary, and recorded on **AUGUST 09, 2007** as Instrument No. **20071869079** in the official records of the County Recorder's Office in and for the County of **LOS ANGELES**, State of **CALIFORNIA**.

AS DESCRIBED IN SAID DEED OF TRUST REFERRED TO HEREIN

Commonly known as: **13727 GAYLIN STREET WHITTIER, CA 90601**

TOGETHER WITH all rights accrued or to accrue under said Deed of Trust.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this **JAN 1 4 2016**.

**BAYVIEW DISPOSITIONS IIIA, LLC**

Name: David Briggs
Title: First Vice President

STATE OF **FLORIDA**          COUNTY OF **MIAMI-DADE**     ) ss.
On **JAN 1 4 2016** before me, **Jane R. Diaz**, personally appeared **DAVID BRIGGS** known to me to be the _First VP_ of **BAYVIEW DISPOSITIONS IIIA, LLC** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_Jane R. Diaz_ (COMMISSION EXP. _____)
NOTARY PUBLIC

JANE R. DIAZ
MY COMMISSION # FF 060595
EXPIRES: February 2, 2018
Bonded Thru Notary Public Underwriters

Page 1 of 1



**This page is part of your document - DO NOT DISCARD**



# 20171245032

**Pages:
0002**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**10/31/17 AT 08:07AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



**SEQ:
01**

**DAR - Mail (Intake)**



**THIS FORM IS NOT TO BE DUPLICATED**

Recording Requested By:
BAYVIEW LOAN SERVICING, LLC

When Recorded Return To:

ACCOMMODATION RECORDING
BAYVIEW LOAN SERVICING, LLC
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID 83401
1-800-894-0742



Document Number:14419696

Batch Number:8681338

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
SELLER'S SERVICING # ▮▮▮▮▮▮ "SALAZAR"

For Value Received, METROPOLITAN LIFE INSURANCE COMPANY BY ITS ATTORNEY-IN-FACT, BAYVIEW LOAN SERVICING, LLC hereby grants, assigns and transfers to BAYVIEW LOAN SERVICING, LLC at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL 33146 all its interest under that certain Deed of Trust dated 07/24/2007 , in the amount of $680,000.00, executed by DAVID M. SALAZAR, A SINGLE MAN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS and Recorded:  08/09/2007  in Book: N/A Page: N/A as Instrument No.: 20071869079 in the County of Los Angeles, State of California.

In witness whereof this instrument is executed.

METROPOLITAN LIFE INSURANCE COMPANY BY ITS ATTORNEY-IN-FACT, BAYVIEW LOAN SERVICING, LLC
On 10-19-17

RAMONA CAREAGA, Assistant Vice-President

STATE OF Florida
COUNTY OF Miami-Dade

On 10-19-17 , before me, SHAYLA L. JENKINS, a Notary Public in and for Miami-Dade in the State of Florida, personally appeared RAMONA CAREAGA, Assistant Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

SHAYLA L JENKINS
Notary Expires: 09/19/2018  #FF 130771

SHAYLA L. JENKINS
MY COMMISSION # FF 130771
EXPIRES September 19, 2018

(This area for notarial seal)

**This page is part of your document - DO NOT DISCARD**



# 20180956855

**Pages:
0002**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**09/18/18 AT 01:27PM**

| | |
|---|---|
| FEES: | 20.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 95.00 |

**L E A D S H E E T**

**SEQ:
01**

SECURE - Daily



**THIS FORM IS NOT TO BE DUPLICATED**

*E497026*

**Recording Requested By:**
MCM CAPITAL, LLC

**When Recorded Mail To:**
MCM CAPITAL, LLC
7101 WISCONSIN AVE.
SUITE 1012
BETHESDA, MD, 20814

*AAM 1*

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Loan #: [redacted] / TS Ref # [redacted]
CA/LOS ANGELES

Assignment Prepared on: July 10, 2018

For Value Received, **BAYVIEW LOAN SERVICING, LLC**, whose address is 4425 PONCE DE LEON BLVD, 5TH
FLOOR, CORAL GABLES, FL, 33146 (**herein "Assignor"**) hereby grant, sell, assign, transfer and convey to
**BAYVIEW DISPOSITIONS IVB, LLC**, whose address is 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL
GABLES, FL, 33146 (**herein "Assignee"**) all interest under that certain Deed of Trust Dated: 7/24/2007, in the
amount of $680,000.00, executed by DAVID M. SALAZAR, A SINGLE MAN to MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS
SUCCESSORS AND ASSIGNS and Recorded: 8/9/2007, Instrument #: 20071869079 in LOS ANGELES County,
State of California and all rights accrued or to accrue under said Deed of Trust.

BAYVIEW LOAN SERVICING, LLC

On:07/12/2018

By: _____

Name: ESLOAN SOTOLONGO

Title:   ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On 07/12/2018, before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the State of FLORIDA,
personally appeared ESLOAN SOTOLONGO, ASSISTANT VICE PRESIDENT, BAYVIEW LOAN SERVICING,
LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon
behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

_____
Rogelio A. Portal
Notary Expires: 8/25/2020 / #: FF 993630

**CA/LOS ANGELES**

ROGELIO A. PORTAL
State of Florida-Notary Public
Commission # FF 993630
My Commission Expires
August 25, 2020

**This page is part of your document - DO NOT DISCARD**



# 20180956856

**Pages:**
**0002**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**09/18/18 AT 01:27PM**

| | |
|---|---|
| FEES: | 20.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 95.00 |

**L E A D S H E E T**

**SEQ:
02**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

E497026



**Recording Requested By:**
MCM CAPITAL, LLC

**When Recorded Mail To:**
MCM CAPITAL, LLC
7101 WISCONSIN AVE.
SUITE 1012
BETHESDA, MD, 20814

<u>**CORPORATE ASSIGNMENT OF DEED OF TRUST**</u>

Loan #: ▆▆▆▆ / TS Ref #: ▆▆▆▆▆▆▆ / Client Ref #: ▆▆▆▆
CA/LOS ANGELES

Assignment Prepared on: July 10, 2018

For Value Received, **BAYVIEW DISPOSITIONS IVB, LLC**, whose address is 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146 (**herein "Assignor"**) hereby grant, sell, assign, transfer and convey to **1900 CAPITAL TRUST II, BY U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE**, whose address is 7101 WISCONSIN AVE, SUITE 1012, BETHESDA, MD, 20814 (**herein "Assignee"**) all interest under that certain Deed of Trust Dated: 7/24/2007, in the amount of $680,000.00, executed by DAVID M. SALAZAR, A SINGLE MAN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS and Recorded: 8/9/2007, Instrument #: 20071869079 in LOS ANGELES County, State of California and all rights accrued or to accrue under said Deed of Trust.

BAYVIEW DISPOSITIONS IVB, LLC

On:07/12/2018

By: _____

Name: ESLOAN SOTOLONGO

Title:    ASSISTANT VICE PRESIDENT

State of FLORIDA
County of MIAMI-DADE

On 07/12/2018, before me, Rogelio A. Portal, a Notary Public in and for MIAMI-DADE in the State of FLORIDA, personally appeared ESLOAN SOTOLONGO, ASSISTANT VICE PRESIDENT, BAYVIEW DISPOSITIONS IVB, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal,

_____
Rogelio A. Portal
Notary Expires: 8/25/2020 / #: FF 993630

**CA/LOS ANGELES**

ROGELIO A. PORTAL
State of Florida-Notary Public
Commission # FF 993630
My Commission Expires
August 25, 2020

**This page is part of your document - DO NOT DISCARD**



# 20191272311

**Pages:**
**0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/20/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 23.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 98.00 |

**L E A D S H E E T**

**SEQ:**
**01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E548170

Recording Requested by Simplifile

Prepared By and Return To:
**Maged Farag**
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

Loan No: ███████

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **1900 CAPITAL TRUST II, BY U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE**, whose address is **7101 WISCONSIN AVE, SUITE 1012, BETHESDA, MD 20814**, (ASSIGNOR), does hereby grant, assign and transfer to **CITIBANK, N.A., AS TRUSTEE FOR CMLTI ASSET TRUST**, whose address is **388 GREENWICH STREET, 14TH FLOOR, NEW YORK, NY 10013**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 7/24/2007
Original Loan Amount: $680,000.00
Executed by (Borrower(s)): DAVID M. SALAZAR
Original Trustee: MARIN CONVEYANCING CORP.
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book N/A, Page N/A
Document/Instrument No: 20071869079 in the Recording District of LOS ANGELES, CA, Recorded on 8/9/2007.

Property more commonly described as: 13727 GAYLIN STREET, WHITTIER, CALIFORNIA 90601

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 11/8/2019

**1900 CAPITAL TRUST II, BY U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE, BY MCM CAPITAL, LLC, ITS ATTORNEY-IN-FACT, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **MURAT DENIZ**                                    Witness Name: **DAVID SUNDWALL**
Title: **VICE PRESIDENT**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of        **FLORIDA**
County of       **PINELLAS**

On 11/8/2019, before me, **MARTHA J. NUNN**, a Notary Public, personally appeared **MURAT DENIZ, VICE
PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR MCM
CAPITAL, LLC, AS ATTORNEY-IN-FACT FOR 1900 CAPITAL TRUST II, BY U.S. BANK TRUST
NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE
TRUSTEE,** personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that
the foregoing paragraph is true and correct. I further certify MURAT DENIZ, signed, sealed, attested and delivered
this document as a voluntary act in my presence.

Witness my hand and official seal.

MARTHA J NUNN
Commission # GG 124160
Expires July 13, 2021
Bonded Thru Budget Notary Services

(Notary Name): **MARTHA J. NUNN**
My commission expires: **7/13/2021**

**This page is part of your document - DO NOT DISCARD**



# 20210068367

**Pages: 0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**01/13/21 AT 12:20PM**

| | |
|---|---|
| FEES: | 23.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 98.00 |

**L E A D S H E E T**



**SEQ:
01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

E534015

RECORDING REQUESTED BY SIMPLIFILE

Prepared By and Return To:
Maged Farag
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____

Loan No: ▮▮▮▮▮

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **CITIBANK, N.A., AS TRUSTEE FOR CMLTI ASSET TRUST**, whose address is **388 GREENWICH STREET, 14TH FLOOR, NEW YORK, NY 10013**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE IGLOO SERIES IV TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 7/24/2007
Original Loan Amount: $680,000.00
Executed by (Borrower(s)): **DAVID M. SALAZAR**
Original Trustee: **MARIN CONVEYANCING CORP.**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC., ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book N/A, Page N/A
Document/Instrument No: 20071869079 in the Recording District of Los Angeles, CA, Recorded on 8/9/2007.

Property more commonly described as: **13727 GAYLIN STREET, WHITTIER, CALIFORNIA 90601**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **12/29/2020**

**CITIBANK, N.A., AS TRUSTEE FOR CMLTI ASSET TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **TIFFANY ALMEYDA**
Title: **VICE PRESIDENT**

Witness Name: **DIEB DOAN**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of        **FLORIDA**
County of       **PINELLAS**

On **12/29/2020**, before me, **JEFF G. JORDAN**, a Notary Public, personally appeared **TIFFANY ALMEYDA,
VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR
CITIBANK, N.A., AS TRUSTEE FOR CMLTI ASSET TRUST**, personally known to me to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF
PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further
certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online
notarization and that TIFFANY ALMEYDA, signed, sealed, attested and delivered this document as a voluntary act
in my presence.

Witness my hand and official seal.

(Notary Name): **JEFF G. JORDAN**
My commission expires: 2/26/2024

# EXHIBIT "4"

**Salazar, David**

Interest Method: Arrears    *Trustee pays Arrears/Borrower pays Ongoing*
Interest Rate: 3.000%    $2,953.00

| Trans Date | Days | Due Date / Description | Transaction Amt | P&I Amt Pd | Mo Acc Int | Cum Acc Int | Pd Interest | Principal | Escrow Bal | Escrow Disb/Pmt | Arrearage Balance | Arrearage Disb/Pmts | Late Chg Balance | Late Chg Disb/Pmts | Suspense | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 41,838.42 | | | (5,784.44) | | 0.00 | | 0.00 | | 965.32 | 710,729.41 |
| | | 06/01/2016 thru 05/01/2018 | 70,145.04 | 70,145.04 | 0.00 | 41,838.42 | 41,838.42 | 28,306.62 | (5,784.44) | 0.00 | (70145.04) | (70145.04) | 0.00 | 0.00 | 965.32 | 682,422.79 |
| | | Escrow Deficiency | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,784.44) | 0.00 | (75929.48) | (5784.44) | 0.00 | 0.00 | 965.32 | 682,422.79 |
| | | Escrow Shortage | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,784.44) | 0.00 | (77074.34) | (1144.86) | 0.00 | 0.00 | 965.32 | 682,422.79 |
| | | Late Charges | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,784.44) | 0.00 | (80282.98) | (3208.64) | 0.00 | 0.00 | 965.32 | 682,422.79 |
| | | Corp Adv | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,784.44) | 0.00 | (83340.54) | (3057.56) | 0.00 | 0.00 | 965.32 | 682,422.79 |
| | | Unapplied | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,784.44) | 0.00 | (82375.22) | 965.32 | 0.00 | 0.00 | 0.00 | 682,422.79 |
| | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,784.44) | 0.00 | (82375.22) | 0.00 | 0.00 | 0.00 | 0.00 | 682,422.79 |
| | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,784.44) | 0.00 | (82375.22) | 0.00 | 0.00 | 0.00 | 0.00 | 682,422.79 |
| 06/07/2018 | | Partial Payment | 118.95 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,784.44) | 0.00 | (82375.22) | 0.00 | 0.00 | 0.00 | 118.95 | 682,422.79 |
| 06/08/2018 | 30 | 06/01/2018 | 3,229.67 | 2,922.71 | 1,706.06 | 1,706.06 | 1,706.06 | 1,216.65 | (5,498.22) | 286.22 | (82375.22) | 0.00 | 0.00 | 0.00 | 139.69 | 681,206.14 |
| 07/05/2018 | 30 | 07/01/2018 | 3,229.67 | 2,922.71 | 1,703.02 | 1,703.02 | 1,703.02 | 1,219.69 | (5,212.00) | 286.22 | (82375.22) | 0.00 | 0.00 | 0.00 | 160.43 | 679,986.44 |
| 08/14/2018 | 30 | 08/01/2018 | 3,229.67 | 2,922.71 | 1,699.97 | 1,699.97 | 1,699.97 | 1,222.74 | (4,925.78) | 286.22 | (82375.22) | 0.00 | 0.00 | 0.00 | 181.17 | 678,763.70 |
| 09/14/2018 | 30 | 09/01/2018 | 3,229.67 | 2,922.71 | 1,696.91 | 1,696.91 | 1,696.91 | 1,225.80 | (4,639.56) | 286.22 | (82375.22) | 0.00 | 0.00 | 0.00 | 201.91 | 677,537.90 |
| 10/11/2018 | 30 | 10/01/2018 | 3,229.67 | 2,922.71 | 1,693.84 | 1,693.84 | 1,693.84 | 1,228.87 | (4,353.34) | 286.22 | (82375.22) | 0.00 | 0.00 | 0.00 | 222.65 | 676,309.03 |
| 10/15/2018 | | Insurance Disb | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,608.34) | (1,255.00) | (82375.22) | 0.00 | 0.00 | 0.00 | 222.65 | 676,309.03 |
| 11/08/2018 | | Tax Disb | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (6,794.20) | (1,185.86) | (82375.22) | 0.00 | 0.00 | 0.00 | 222.65 | 676,309.03 |
| 11/09/2018 | 30 | 11/01/2018 | 3,229.67 | 2,922.71 | 1,690.77 | 1,690.77 | 1,690.77 | 1,231.94 | (6,507.98) | 286.22 | (82375.22) | 0.00 | 0.00 | 0.00 | 243.39 | 675,077.09 |
| 11/26/2018 | | Arrears | 7,340.98 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (6,507.98) | 0.00 | (75034.24) | 7340.98 | 0.00 | 0.00 | 243.39 | 675,077.09 |
| 12/13/2018 | 30 | 12/01/2018 | 3,229.67 | 2,922.71 | 1,687.69 | 1,687.69 | 1,687.69 | 1,235.02 | (6,221.76) | 286.22 | (75034.24) | 0.00 | 0.00 | 0.00 | 264.13 | 673,842.08 |
| 12/26/2018 | | Arrears | 1,576.58 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (6,221.76) | 0.00 | (73457.66) | 1576.58 | 0.00 | 0.00 | 264.13 | 673,842.08 |
| 01/16/2019 | 30 | 01/01/2019 | 3,229.67 | 2,922.71 | 1,684.61 | 1,684.61 | 1,684.61 | 1,238.10 | (5,935.54) | 286.22 | (73457.66) | 0.00 | 0.00 | 0.00 | 284.87 | 672,603.97 |
| 02/11/2019 | 30 | 02/01/2019 | 3,229.67 | 2,922.71 | 1,681.51 | 1,681.51 | 1,681.51 | 1,241.20 | (5,649.32) | 286.22 | (73457.66) | 0.00 | 0.00 | 0.00 | 305.61 | 671,362.77 |
| 02/18/2019 | | Arrears | 1,576.59 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,649.32) | 0.00 | (71881.07) | 1576.59 | 0.00 | 0.00 | 305.61 | 671,362.77 |
| 03/06/2019 | 30 | 03/01/2019 | 3,231.00 | 2,922.71 | 1,678.41 | 1,678.41 | 1,678.41 | 1,244.30 | (5,363.10) | 286.22 | (71881.07) | 0.00 | 0.00 | 0.00 | 327.68 | 670,118.47 |
| 03/19/2019 | | Tax Disb | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (6,548.95) | (1,185.85) | (71881.07) | 0.00 | 0.00 | 0.00 | 327.68 | 670,118.47 |
| 03/27/2019 | | Arrears | 1,576.58 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (6,548.95) | 0.00 | (70304.49) | 1576.58 | 0.00 | 0.00 | 327.68 | 670,118.47 |
| 04/16/2019 | 30 | 04/01/2019 | 3,229.67 | 2,922.71 | 1,675.30 | 1,675.30 | 1,675.30 | 1,247.41 | (6,262.73) | 286.22 | (70304.49) | 0.00 | 0.00 | 0.00 | 348.42 | 668,871.06 |
| 04/29/2019 | | Arrears | 1,576.59 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (6,262.73) | 0.00 | (68727.90) | 1576.59 | 0.00 | 0.00 | 348.42 | 668,871.06 |
| 05/07/2019 | 30 | 05/01/2019 | 3,231.00 | 2,922.71 | 1,672.18 | 1,672.18 | 1,672.18 | 1,250.53 | (5,976.51) | 286.22 | (68727.90) | 0.00 | 0.00 | 0.00 | 370.49 | 667,620.52 |
| | | Effective 06/01/2019 Escrow = $379.17 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,976.51) | 0.00 | (68727.90) | 0.00 | 0.00 | 0.00 | 370.49 | 667,620.52 |
| 05/23/2019 | | Arrears | 1,576.58 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,976.51) | 0.00 | (67151.32) | 1576.58 | 0.00 | 0.00 | 370.49 | 667,620.52 |
| 06/16/2019 | 30 | 06/01/2019 | 3,231.00 | 2,922.71 | 1,669.05 | 1,669.05 | 1,669.05 | 1,253.66 | (5,597.34) | 379.17 | (67151.32) | 0.00 | 0.00 | 0.00 | 299.61 | 666,366.86 |
| 06/21/2019 | | Arrears | 1,576.59 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,597.34) | 0.00 | (65574.73) | 1576.59 | 0.00 | 0.00 | 299.61 | 666,366.86 |
| 07/22/2019 | 30 | 07/01/2019 | 3,231.00 | 2,922.71 | 1,665.92 | 1,665.92 | 1,665.92 | 1,256.79 | (5,218.17) | 379.17 | (65574.73) | 0.00 | 0.00 | 0.00 | 228.73 | 665,110.07 |
| 07/31/2019 | | Arrears | 1,576.58 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,218.17) | 0.00 | (63998.15) | 1576.58 | 0.00 | 0.00 | 228.73 | 665,110.07 |
| 08/23/2019 | | Arrears | 1,585.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,218.17) | 0.00 | (62413.14) | 1585.01 | 0.00 | 0.00 | 228.73 | 665,110.07 |

| Trans Date | Days | Due Date / Description | Transaction Amt | T&I Amt Pd | Mo Acc Int | Pmt Acc Interest | Principal | Escrow Bal | Escrow Disb/Pmt | Arrearage Balance | Arrearage Disb/Pmts | Late Chg Balance | Late Chg Disb/Pmts | Suspense | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/06/2019 | 30 | 08/01/2019 | 3,231.00 | 2,922.71 | 1,662.78 | 1,662.78 | 1,259.93 | (4,839.00) | 379.17 | (62413.14) | 0.00 | 0.00 | 0.00 | 157.85 | 663,850.14 |
| 09/26/2019 | | Arrears | 1,585.01 | 0.00 | 0.00 | 0.00 | 0.00 | (4,839.00) | 0.00 | (60828.13) | 1585.01 | 0.00 | 0.00 | 157.85 | 663,850.14 |
| 10/14/2019 | 30 | 09/01/2019 | 3,230.00 | 2,922.71 | 1,659.63 | 1,659.63 | 1,263.08 | (4,459.83) | 379.17 | (60828.13) | 0.00 | 0.00 | 0.00 | 85.97 | 662,587.05 |
| 10/16/2019 | | Insurance Disb | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,723.83) | (1,264.00) | (60828.13) | 0.00 | 0.00 | 0.00 | 85.97 | 662,587.05 |
| 10/28/2019 | | Arrears | 1,585.01 | 0.00 | 0.00 | 0.00 | 0.00 | (5,723.83) | 0.00 | (59243.12) | 1585.01 | 0.00 | 0.00 | 85.97 | 662,587.05 |
| **11/05/2019** | | **Loan Transferred to Fay** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **(5,723.83)** | **0.00** | **(59243.12)** | **0.00** | **0.00** | **0.00** | **85.97** | **662,587.05** |
| 11/26/2019 | | Arrears | 1,574.91 | 0.00 | 0.00 | 0.00 | 0.00 | (5,723.83) | 0.00 | (57668.21) | 1574.91 | 0.00 | 0.00 | 85.97 | 662,587.05 |
| 12/05/2019 | 30 | 10/01/2019 | 3,230.00 | 2,922.71 | 1,656.47 | 1,656.47 | 1,266.24 | (5,344.66) | 379.17 | (57668.21) | 0.00 | 0.00 | 0.00 | 14.09 | 661,320.81 |
| 12/24/2019 | | Arrears | 1,574.90 | 0.00 | 0.00 | 0.00 | 0.00 | (5,344.66) | 0.00 | (56093.31) | 1574.90 | 0.00 | 0.00 | 14.09 | 661,320.81 |
| 01/18/2020 | | Partial Payment | 3,210.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,344.66) | 0.00 | (56093.31) | 0.00 | 0.00 | 0.00 | 3,224.09 | 661,320.81 |
| 01/30/2020 | | Arrears | 1,574.91 | 0.00 | 0.00 | 0.00 | 0.00 | (5,344.66) | 0.00 | (54518.40) | 1574.91 | 0.00 | 0.00 | 3,224.09 | 661,320.81 |
| 02/10/2020 | | Tax Disb | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (6,615.77) | (1,271.11) | (54518.40) | 0.00 | 0.00 | 0.00 | 3,224.09 | 661,320.81 |
| 02/28/2020 | | Arrears | 1,574.90 | 0.00 | 0.00 | 0.00 | 0.00 | (6,615.77) | 0.00 | (52943.50) | 1574.90 | 0.00 | 0.00 | 3,224.09 | 661,320.81 |
| 03/09/2020 | 30 | 11/01/2020 | 3,230.00 | 2,922.71 | 1,653.30 | 1,653.30 | 1,269.41 | (6,236.60) | 379.17 | (52943.50) | 0.00 | 0.00 | 0.00 | 3,152.21 | 660,051.43 |
| 03/26/2020 | | Arrears | 1,574.91 | 0.00 | 0.00 | 0.00 | 0.00 | (6,236.60) | 0.00 | (51368.59) | 1574.91 | 0.00 | 0.00 | 3,152.21 | 660,051.43 |
| 04/01/2020 | | Tax Disb | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (7,507.70) | (1,271.10) | (51368.59) | 0.00 | 0.00 | 0.00 | 3,152.21 | 660,051.43 |
| 04/08/2020 | 30 | 12/01/2019 | 3,232.00 | 2,922.71 | 1,650.13 | 1,650.13 | 1,272.58 | (7,128.53) | 379.17 | (51368.59) | 0.00 | 0.00 | 0.00 | 3,082.33 | 658,778.85 |
| 04/22/2020 | | Arrears | 1,574.90 | 0.00 | 0.00 | 0.00 | 0.00 | (7,128.53) | 0.00 | (49793.69) | 1574.90 | 0.00 | 0.00 | 3,082.33 | 658,778.85 |
| 05/11/2020 | 30 | 01/01/2020 | 3,230.00 | 2,922.71 | 1,646.95 | 1,646.95 | 1,275.76 | (6,749.36) | 379.17 | (49793.69) | 0.00 | 0.00 | 0.00 | 3,010.45 | 657,503.09 |
| 06/11/2020 | 30 | 02/01/2020 | 3,230.00 | 2,922.71 | 1,643.76 | 1,643.76 | 1,278.95 | (6,370.19) | 379.17 | (49793.69) | 0.00 | 0.00 | 0.00 | 2,938.57 | 656,224.13 |
| 06/22/2020 | | Arrears | 1,515.95 | 0.00 | 0.00 | 0.00 | 0.00 | (6,370.19) | 0.00 | (48277.74) | 1515.95 | 0.00 | 0.00 | 2,938.57 | 656,224.13 |
| 07/21/2020 | | Arrears | 1,515.95 | 0.00 | 0.00 | 0.00 | 0.00 | (6,370.19) | 0.00 | (46761.79) | 1515.95 | 0.00 | 0.00 | 2,938.57 | 656,224.13 |
| 08/17/2020 | 30 | 03/01/2020 | 3,230.00 | 2,922.71 | 1,640.56 | 1,640.56 | 1,282.15 | (5,991.02) | 379.17 | (46761.79) | 0.00 | 0.00 | 0.00 | 2,866.69 | 654,941.98 |
| 08/27/2020 | | Arrears | 1,515.95 | 0.00 | 0.00 | 0.00 | 0.00 | (5,991.02) | 0.00 | (45245.84) | 1515.95 | 0.00 | 0.00 | 2,866.69 | 654,941.98 |
| 09/15/2020 | 30 | 04/01/2020 | 3,230.00 | 2,922.71 | 1,637.35 | 1,637.35 | 1,285.36 | (5,611.85) | 379.17 | (45245.84) | 0.00 | 0.00 | 0.00 | 2,794.81 | 653,656.63 |
| 10/17/2020 | 30 | 05/01/2020 | 3,230.00 | 2,922.71 | 1,634.14 | 1,634.14 | 1,288.57 | (5,232.68) | 379.17 | (45245.84) | 0.00 | 0.00 | 0.00 | 2,722.93 | 652,368.06 |
| 10/21/2020 | | Insurance Disb | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (6,640.68) | (1,408.00) | (45245.84) | 0.00 | 0.00 | 0.00 | 2,722.93 | 652,368.06 |
| 10/26/2020 | | Arrears | 3,031.88 | 0.00 | 0.00 | 0.00 | 0.00 | (6,640.68) | 0.00 | (42213.96) | 3031.88 | 0.00 | 0.00 | 2,722.93 | 652,368.06 |
| 11/23/2020 | | Tax Disb | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (7,929.29) | (1,288.61) | (42213.96) | 0.00 | 0.00 | 0.00 | 2,722.93 | 652,368.06 |
| 11/25/2020 | | Arrears | 1,511.45 | 0.00 | 0.00 | 0.00 | 0.00 | (7,929.29) | 0.00 | (40702.51) | 1511.45 | 0.00 | 0.00 | 2,722.93 | 652,368.06 |
| **12/19/2020** | | **Loan Transferred to SN** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **(7,929.29)** | **0.00** | **(40702.51)** | **0.00** | **0.00** | **0.00** | **2,722.93** | **652,368.06** |
| 12/24/2020 | 30 | 06/01/2020 | 3,239.89 | 2,922.71 | 1,630.92 | 1,630.92 | 1,291.79 | (7,550.12) | 379.17 | (40702.51) | 0.00 | 0.00 | 0.00 | 2,660.94 | 651,076.27 |
| 01/11/2021 | | Arrears | 1,511.45 | 0.00 | 0.00 | 0.00 | 0.00 | (7,550.12) | 0.00 | (39191.06) | 1511.45 | 0.00 | 0.00 | 2,660.94 | 651,076.27 |
| 02/08/2021 | 30 | 07/01/2020 | 3,209.00 | 2,922.71 | 1,627.69 | 1,627.69 | 1,295.02 | (7,170.95) | 379.17 | (39191.06) | 0.00 | 0.00 | 0.00 | 2,568.06 | 649,781.25 |
| | | Effective 08/01/2019 Escrow = $317.18 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (7,170.95) | 0.00 | (39191.06) | 0.00 | 0.00 | 0.00 | 2,568.06 | 649,781.25 |
| 03/03/2021 | 30 | 08/01/2019 | 3,230.00 | 2,922.71 | 1,624.45 | 1,624.45 | 1,298.26 | (6,853.77) | 317.18 | (39191.06) | 0.00 | 0.00 | 0.00 | 2,558.17 | 648,482.99 |
| 03/03/2021 | | Arrears | 3,022.90 | 0.00 | 0.00 | 0.00 | 0.00 | (6,853.77) | 0.00 | (36168.16) | 3022.90 | 0.00 | 0.00 | 2,558.17 | 648,482.99 |
| 03/18/2021 | | Tax Disb | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (8,142.37) | (1,288.60) | (36168.16) | 0.00 | 0.00 | 0.00 | 2,558.17 | 648,482.99 |
| 03/25/2021 | | Arrears | 1,511.45 | 0.00 | 0.00 | 0.00 | 0.00 | (8,142.37) | 0.00 | (34656.71) | 1511.45 | 0.00 | 0.00 | 2,558.17 | 648,482.99 |
| 04/05/2021 | 30 | 09/01/2020 | 3,230.00 | 2,922.71 | 1,621.21 | 1,621.21 | 1,301.50 | (7,825.19) | 317.18 | (34656.71) | 0.00 | 0.00 | 0.00 | 2,548.28 | 647,181.49 |

| Trans Date | Days | Due Date / Description | Transaction Amt | T&I Amt Pd | Mo Acc Int | Cum Acc Int | Interest | Principal | Escrow Bal | Escrow Disb/Pmt | Arrearage Balance | Arrearage Disb/Pmts | Late Chg Balance | Late Chg Disb/Pmts | Suspense | Prin Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/17/2021 | | Late Charge Assess | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (7,825.19) | 0.00 | (34656.71) | 0.00 | (146.14) | (146.14) | 2,548.28 | 647,181.49 |
| | | Arr Esc to Esc | 2,508.65 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,316.54) | 2,508.65 | (34656.71) | 0.00 | (146.14) | 0.00 | 2,548.28 | 647,181.49 |
| | | Reclassify Arr Esc | 4,420.65 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (895.89) | 4,420.65 | (34656.71) | 0.00 | (146.14) | 0.00 | 2,548.28 | 647,181.49 |
| 05/05/2201 | 30 | 10/01/2020 | 3,301.88 | 2,922.71 | 1,617.95 | 1,617.95 | 1,617.95 | 1,304.76 | (578.71) | 317.18 | (34656.71) | 0.00 | (146.14) | 0.00 | 2,610.27 | 645,876.74 |
| 05/24/2021 | | Arrears | 3,027.39 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (578.71) | 0.00 | (31629.32) | 3027.39 | (146.14) | 0.00 | 2,610.27 | 645,876.74 |
| 06/07/2021 | 30 | 11/01/2020 | 3,230.00 | 2,922.71 | 1,614.69 | 1,614.69 | 1,614.69 | 1,308.02 | (261.53) | 317.18 | (31629.32) | 0.00 | (146.14) | 0.00 | 2,600.38 | 644,568.72 |
| 06/23/2021 | | Arrears | 1,515.95 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (261.53) | 0.00 | (30113.37) | 1515.95 | (146.14) | 0.00 | 2,600.38 | 644,568.72 |
| 07/08/2021 | 30 | 12/01/2020 | 3,240.00 | 2,922.71 | 1,611.42 | 1,611.42 | 1,611.42 | 1,311.29 | 55.65 | 317.18 | (30113.37) | 0.00 | (146.14) | 0.00 | 2,600.49 | 643,257.42 |
| 07/26/2021 | | Arrears | 1,673.89 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 55.65 | 0.00 | (28439.48) | 1673.89 | (146.14) | 0.00 | 2,600.49 | 643,257.42 |
| 08/03/2021 | 30 | 01/01/2021 | 3,240.00 | 2,922.71 | 1,608.14 | 1,608.14 | 1,608.14 | 1,314.57 | 372.83 | 317.18 | (28439.48) | 0.00 | (146.14) | 0.00 | 2,600.60 | 641,942.85 |
| 08/23/2021 | | Arrears | 1,673.88 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 372.83 | 0.00 | (26765.60) | 1673.88 | (146.14) | 0.00 | 2,600.60 | 641,942.85 |
| 09/08/2021 | 30 | 02/01/2021 | 3,240.00 | 2,922.71 | 1,604.86 | 1,604.86 | 1,604.86 | 1,317.85 | 690.01 | 317.18 | (26765.60) | 0.00 | (146.14) | 0.00 | 2,600.71 | 640,625.00 |
| | | Late Charge Payment | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 690.01 | 0.00 | (26765.60) | 0.00 | (146.03) | 0.11 | 2,600.60 | 640,625.00 |
| | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 690.01 | 0.00 | (26765.60) | 0.00 | (146.03) | 0.00 | 2,600.60 | 640,625.00 |
| | | **DUE FOR 03/01/2021** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **690.01** | **0.00** | **(26765.60)** | **0.00** | **(146.03)** | **0.00** | **2,600.60** | **640,625.00** |
| | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 690.01 | 0.00 | (26765.60) | 0.00 | (146.03) | 0.00 | 2,600.60 | 640,625.00 |
| | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 690.01 | 0.00 | (26765.60) | 0.00 | (146.03) | 0.00 | 2,600.60 | 640,625.00 |
| | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 690.01 | 0.00 | (26765.60) | 0.00 | (146.03) | 0.00 | 2,600.60 | 640,625.00 |
| | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 690.01 | 0.00 | (26765.60) | 0.00 | (146.03) | 0.00 | 2,600.60 | 640,625.00 |